# COURT OF ERRORS AND APPEALS,

## JUNE TERM,

## 1884.

———•———

JAMES BRADFORD, appellant *v.* ALFRED S. ROBINSON, LOLA D.
ROBINSON, MARIA ROBINSON, ROBERT E. ROBINSON, and
MARIA J. ROBINSON, widow and Administratrix of ROBERT
E. ROBINSON, deceased, defendants.

*Infant Trustee—Partition in Chancery between Tenants in Com-*
*mon.*

Under the statute law of this State, where a trust is established in a suit in equity, in-
stituted for that purpose, all the parties in interest having been heard, a decree
against an infant is as effectual as against persons *sui juris.*

Nevertheless a minor is entitled to a rehearing if applied for within six months and to
an appeal within two years after his disability ceases.

No distinction now exists between express and constructive trusts.

The ancient jurisdiction of the Court of Chancery to order partition between tenants
in common is not affected by the statute law of this State; and where the
assistance of the Court of Chancery is otherwise needed in adjucating between
tenants in common, partition may be ordered where it will promote the several
interests of the litigants and it is prayed for in the bill.

(*June 20, 1884.*)

APPEAL from the *pro forma* decree of the Court of Chancery,
in and for New Castle County.

The allegations of the Bill, not denied by the answers and
established by the proof in the cause, are as follows:

On the 2d day of June, A. D. 1873, the complainant, together
with Robert E. Robinson, late of the City of Wilmington, deceased,
purchased at public sale, for the sum of $1050, a lot of land situ-
ated in Wilmington, New Castle County aforesaid. The property
was bid off by Robinson, and complainant paid him one-half the

purchase money. For convenience, and with the consent of complainant, a deed was executed and delivered to the said Robinson, conveying to him the entire title in fee simple, to said premises, with the expressed understanding that he, the said Robinson, should hold the title subject to the right of the complainant to one equal undivided half part thereof.

At the time of the death of the said Robert E. Robinson, to wit, the twenty-third day of November, A. D. 1875, the legal title to said premises still remained in him, and at his decease, there were left to survive him as heirs at law, his widow, the said Maria J. Robinson, and four children, the said Alfred S. Robinson, Lola D. Robinson, Maria Robinson and Robert E. Robinson, to whom the legal title to said premises descended, subject to the said resulting trust in favor of the complainant.

Of the defendants, Lola D. Robinson, Maria Robinson, and Robert E. Robinson were infants under the age of twenty-one years at the filing of the bill, but the said Lola D. Robinson has arrived at the age of twenty-one years since the suit was commenced.

The Bill prays:

1. For decree declaring that the heirs at law of said Robert E. Robinson, deceased, hold the said premises subject to a resulting trust as to one equal undivided half part thereof in favor of complainant.

2. For decree for conveyance to complainant, by parties holding legal title, of one equal undivided half part thereof.

3. For partition of said premises among the parties entitled, or for sale by a trustee to be appointed by the Court, and distribution of the proceeds among those entitled.

The joint and several answers of Alfred S. Robinson, Lola D. Robinson and Maria J. Robinson, widow and Administratrix of Robert E. Robinson, deceased, admit all the allegations of the Bill, and they submit themselves to such order or decree as the Chancellor may deem proper in the premises.

The joint and several answers of Maria Robinson and Robert E. Robinson, minor children of Robert E. Robinson, deceased, by

Maria J. Robinson, their Guardian, without either admitting or denying the facts set forth in the Bill, submit themselves and their interests in the property, matters and things mentioned in the bill to such order or decree as the Court may deem proper in the premises.

The deposition of Henry C. Robinson, brother of Robert E. Robinson, deceased, and uncle of the minors, was taken, proving all the facts as alleged, and that the payment of one half of the purchase money was made by complainant through the witness to his brother.

There was no controversy in the case, either as to law, or fact, the proceeding being amicably conducted, and being considered by the widow of Robinson and his brother, the witness, as necessary for the interests of Robinson's estate, as well as of the complainant. The resulting trust being clearly proven, the Chancellor was prepared, upon examination of the papers, to make a decree enforcing the same and directing conveyance to the complainant of one equal undivided half part of the premises in question ; but a question arose whether an immediate conveyance could be decreed as against the infant defendants, or whether it was necessary that the decree should contain a clause giving to the infants their day after reaching the age of twenty-one, to show cause against the decree.

It was also prayed by the bill, and desired by all parties to the proceeding, that partition should be decreed in this cause ; and as to this, a question also arose whether the partition could be made under the present proceeding, or whether it was necessary for the parties to proceed under the statute by petition. This involved the question whether the statutory jurisdiction of the Court of Chancery in this State, in cases of partition, excluded the ancient jurisdiction of the Court of Chancery to decree partition upon bill filed. These questions involving title to land, and being important ones, it was concluded by the Chancellor, upon the suggestion of counsel, and with the consent of all parties, to enter a *pro forma* decree declaring the trust and decreeing the conveyance, and giving the infant defendants their day. From this decree, with the approval of the Chancellor, an appeal has been formally taken, in order to bring the questions involved before this Court for an authoritative decision. The decree entered below was as follows:

## DECREE.

AND NOW, to wit, this 20th day of December, A. D. 1883, the above stated case having been heard upon the bill, answer and proofs, and the same having been considered by the Chancellor, and it appearing to the Court that the real estate mentioned and described in the bill of complaint in said cause was held by Robert Emmett Robinson until the date of his death, under and subject to a resulting trust therein as to an equal undivided half part thereof in favor of James Bradford, the complainant in this cause, it is ordered, adjudged and decreed, by consent, *pro forma*, that the defendants, as heirs at law of Robert Emmett Robinson, deceased, have, since his death, held the equal, undivided half part of said real estate, and still hold the same, subject to a resulting trust in favor of the complainant, and that said complainant is entitled to an equal undivided half part, share or interest in said real estate in fee simple.

And it is further ordered, adjudged and decreed, by consent *pro forma* as aforesaid, that the said Alfred S. Robinson, Lola D. Tatnall, formerly Lola D. Robinson, Maria Robinson and Robert E. Robinson shall convey the legal title of said one equal undivided half part of said real estate to the said James Bradford, the complainant, in fee simple, and that said Maria J. Robinson, widow of the said Robert E. Robinson, deceased, do join in said conveyance.

And it further appearing that the said Maria Robinson and Robert E. Robinson are infants under the age of twenty-one years, the said Lola D. Tatnall, formerly Lola D. Robinson, having, since the filing of the bill in this cause, attained that age, it is further ordered, adjudged and decreed, *pro forma* as aforesaid, that this decree is to be binding upon the said Maria Robinson and Robert E. Robinson unless they or either of them, being served with a subpœna to show cause against the same, shall, within six months after they shall respectively attain the age of twenty-one years, show unto this Court good cause to the contrary.

And it is further ordered that the costs of this cause be paid by the parties respectively in the proportion of their several interests in the said lands and premises and that this decree is made

without prejudice to the right of either party to appeal to the Court of Errors and Appeals.

The appellant files the following causes of appeal, to wit:—

1. For that the Chancellor erred in not decreeing that the said infant defendants, Maria Robinson and Robert E. Robinson, should immediately join in the deed conveying the undivided equal half part of the said real estate to the said complainant, and in allowing the said infant defendants their day.

2. For that the Chancellor erred in decreeing that the said infant defendants, Maria Robinson and Robert E. Robinson, should have their day after arriving at the age of twenty-one years to show cause against the said decree.

3. For that the Chancellor erred in not decreeing the partition or sale of the said lands and premises as prayed in the complainant's said bill of complaint.

*Austin Harrington*, for appellant:

I. Under our statute, where an infant is held to be a trustee under any trust, whether express, constructive or resulting, a decree for a conveyance may be made against such infant as if he were of lawful age. And, therefore, in the present case, the complainant was entitled to an absolute decree for the conveyance by the infant defendants without the addition of the clause allowing them a day to show cause against the decree.

The discussion of this general proposition involves the critical examination of the English Statutes upon the subject of the conveyance by trustees under disability, under the direction of the Court of Chancery, and also, of those of our own State.

There is no question that originally, and independent of statutory provisions, either in England or this State, in any decree against an infant, he must be allowed his day to show cause after he came of age.

In England, the Act I. Will. IV. c. 60, commonly known as Sir Edward Sugden's Trustee Act, finally perfected the legislation under which the English Court of Chancery is enabled to decree the conveyance of a trust estate in the many cases in which the trustee is laboring under a disability.

3

This Act was passed in 1830. Prior to this Act, the Act of 7 Anne Ch. c. 19, enabled infant trustees to convey by direction of the Court of Chancery to be made upon petition.

This Statute, and others of a kindred nature, concerning lunatic trustees &c., were repealed and their provision re-enacted and extended by the Act of 6 Geo. 4. c. 74. This law was the first statute which was held in England to apply to infant or lunatic trustees, who had any beneficial interest or claim, or any duties to perform. The prior Statutes had been held to apply only to dry trustees. The Act of 6 Geo. 4. c. 74, however, extended the jurisdiction of the Court to trustees having an interest or duty to perform, but did not apply to trustees in constructive trusts, except where the existence of the trust had been determined by a decree, prior to the devolving of the trust on the infant.

The Act I. Will. IV., after providing specifically, in the sixth section, for the conveyance by infant trustees under the direction of the Court of Chancery, afterwards, in the 18th section, extends the previous provisions of the act, including those in relation to infant trustees, to every case of construction or resulting trust, and in the 16th section, the provisions of the act are expressly applied to the case of a resulting trust where a purchase of land is made by one person in the name of another.

For the course of English Legislation upon the subject, see *Hill on Trustees*, part 2, Ch. 4, Sec. 3.

The Delaware Statute, in relation to the Court of Chancery, *Rev. Code* Ch. 95, Sec. 13, provides for the conveyance of real estate held in trust by an infant trustee, under direction of a Court of Chancery, in the same manner as is provided in the English Statute I. Will IV. These sections were first enacted in 1806, being sections 11 and 12 of Chap. 21, 4 Del. Laws.

The Act of 1806 was passed before there had been any provision in the English Statutes for the conveyance by an infant trustee in cases where the trust was other than a dry trust: and the language of the Act of 1806 would seem to be intended to conform to the English course of legislation. Section 11 provides that persons " under the age of 21 years having estates in lands, " tenements and hereditaments in trust *only* for others," may convey, &c., under the direction of the Court of Chancery.

In the Digest of 1829, page 109, the section remains unchanged, retaining the word *only*, but in the *Revised Code* of 1852, the Sections 11 and 12 in question were remodelled and embodied in Sec. 13, Chap. 95, and the word *only* stricken out; so that it shall read " any person under the age of twenty-one years having real estate in trust for others may, &c."

It must be presumed that the Legislature intended by this change to give to the new section a different effect from that which properly belonged to the old one.   At the time of the enactment of the Act of 1852, the whole subject of conveyance by trustees laboring under any incapacity, had been the subject of a progressive system· of legislation in England which culminated in the Statute of I. Will. IV., before referred to, and which was passed in 1830, subsequent to the digest of 1829, and about twenty years prior to the time of the revision of 1852.   The presumption that a change in the Statute was intended by the omission of the word *only*, would apply, even if it were an ordinary act of legislation ; but in this case, it gathers additional force from the fact that it was not a casual act of legislation, but formed a part of the careful and systematic revision of the whole body of our Statute Law, made, not by laymen, as members of the Legislature usually are, but by three lawyers, all of whom subsequently held the highest judicial positions in the State.   It is not only presumable, but it is known to this Court, that these revisers were, all of them, thoroughly acquainted with the course of legislation in England upon subjects of this kind; and it is a most natural conclusion that the change referred to in the section under consideration was made for the express purpose of bringing the Statutory provision of our own State upon this important subject, into exact consonance with the well matured system of legislation in England.   It is hardly necessary to add that the change of this section was made by these revisers, and appears for the first time in the Code of 1852, there having been no amendment of it by any Act of Assembly passed between the Digest of 1829 and the Code of 1852.

A strong incidental confirmation of the view here expressed, as to the purpose of the revisers of 1852, will be found in a note on page 94 of the *Equity Rules and Forms* prepared by Chancellor Bates.   Among the Chancery Statutes therein re-printed from the

Revised Code, is the Act of March 1st, 1853, 11 *Del. Laws, p.* 83.
This was an act providing for the conveyance by trustees under
disability.   This act is said to have been drawn by Chancellor
Bates, but whether this be so or not, he was undoubtedly familiar
with its scope and intention.   His note to this Act is as follows:
" This Act is framed after the English Statute known as Sir E.
" Sugden's Trustee Act, 1 Will IV., Ch. 60.   For the provisions
" of that Statute and the course of decisions under it, see *Hill on*
" *Trustees, Part II., Ch.* 4, *Sec.* 3 ; *Lewin on Trusts,* 24 *Law Lib.,*
" 440.   The case of an infant trustee, embraced in the English
" Statute, is omitted in this act, probably because it ·had been pre-
" viously provided for by *Rev. Code, Ch.* 95, *Sec.* 13." ·

This act of 1853, was undoubtedly intended to provide for
conveyance by trustees under disability, excepting infants (who
are omitted,) in all such cases as were comprehended by the Eng-
lish Act I. Will. IV.   In the note just cited, the omission of the
case of the infant is referred to, and it is suggested that the omission
was probably made because that case had been previously provided
for by the *Revised Code, Ch.* 95, *Sec.* 13, the effect of which we
have been considering.

It is almost impossible to conceive that, after all the disad-
vantages and troubles which in England led up to the passage of
the Act of Will. IV, by reason of the provision for conveyances
by trustees under disability having applied only to the case of dry
trusts under the Statute of Anne but being extended to every case
of constructive or resulting trusts, under the Act of Will. IV, that
either the revisers of 1852 or the draughtsman of the Act of 1853
could have intended to frame so weak and ineffective a statute as
that which had existed in England nearly a century and a half
before, and which had been finally superseded by the complete
system embodied in the Act of Will. IV, nearly a quarter of a
century before.   No better illustration could be found of the dif-
ficulties arising from the narrow construction of our own Statute
in such cases, than that presented to the Court in this very case, in
which the complainant is entitled to a resulting trust in one half of
an unimproved lot which, under the existing decree of the Chan-
cellor, must remain in such condition that it cannot be sold or im-
proved for about nine years—the period which would elapse before

the youngest infant defendant reaches the age of twenty-one years. Every consideration therefore which influences a Court of last resort in giving a construction to such a statute as this, is in favor of that interpretation for which we contend.

(1.) It would make our law consistent with the English system, which we have always followed in legislation, in practice in the courts of law and equity and in judicial construction. Our whole system of statute law is based upon the English Statutes, much of it being taken *verbatim*; and where it is not so, it is universally the practice of our courts to consider the effect of English Statutes, and the construction that has been given to them by English courts, in construing our own acts of legislation.

(2.) The broader construction is perfectly consistent with the language of the Statute. It is entirely within the competence of this Court to give that construction to it, and to do so would prevent a *hiatus* in the law which it would be manifestly necessary to have corrected by additional legislation, as well as to relieve, in the present case and others like it, great hardship and disadvantage.

(3.) In the present case, the Court deals with the construction of these statutes *de novo*, and unfettered by any previous judicial decision. Of two constructions, they will, therefore, incline to that which will most tend to promote the general welfare, and to avoid unnecessarily complicating title to land and causing hardship and inconvenience to innocent parties.

(4.) The tendency of our own Statute law is in favor of the final adjudication of the rights of infants in land in which they have a right in common with other persons. This is shown by our system of partition in Chancery, in which the rights of infants are finally adjudicated, the Court of Chancery always being not only competent, but ready to afford them adequate protection, as was shown in the present case, in which, although there was no dispute as to the facts, the Court of Chancery required the facts upon which the resulting trust rested, to be proved, and would not permit them to be confessed so as to bind the infants.

All of the English cases prior to the trustee acts before referred to, have no relation to these points; and after the conclusive disposition of the subject of infant trustees made by the Act of I. Will. IV, the question could not, of course, arise in that country.

There are few cases not directly in point, but illustrating the tendency to extend the effect of the English legislation as much as possible by judicial construction.

In *Peyton v. McDermott*, 6 Ir. Eq. R., 220, it was held that the infant tenant in tail of lands decreed to be sold for an equitable charge is a trustee under the 8th and 18th sections of the I. W. 4. c 60.

In *Jones v. Ham*, 3 Ir. Eq. R., 65, it was held that an infant defendant entitled to a portion of the equity of redemption of lands decreed to be sold in a foreclosure suit, was ordered to execute the conveyance to the purchaser. The decree did not give him a day to show cause on coming of age.

In most of the United States will be found early decisions that where a conveyance was directed to be made by an infant defendant, he must have a day to show cause. Such, in our own State, was the case of *Lockwood v. Stradley*, 1 Del. Chy., 298, which, however, only established the principle here admitted, that generally in decrees against infants, a day must be allowed to show cause. That case was not at all like the present one; nor was it a case where an infant was decreed to be a trustee. In the course of the informal consideration of this case in the Court below, the Chancellor referred to a case in Massachusetts, which he had once seen, but was not able to refer to, in which the infant defendant was represented by the late Judge Curtis. This case, upon careful examination, we presume to be *Coffin v. Heath*, 6 Metc., 76, and upon examination, it will be found not to have any application to the present case.

There is, however, a later Massachusetts case, *Walsh v. Walsh*, 116 Mass., 377, in which it was held that a decree against an infant trustee, even when the trust results by implication of law, is not erroneous for want of allowing him a day to answer after coming of age.

There has been passed in Massachusetts, as in our own State and most others, a statute providing for conveyances under a decree of the court of equity by infant trustees, and the Supreme Court of Massachusetts held that, since the passage of this statute, it was not necessary to insert in the decree a clause giving the infant defendant a day to show cause. The exact terms of the Massachu-

setts Statute did not appear, but from the substance of it, as given in the case referred to, it appears to have the same effect as that which we have contended should be given to our Statute.

There is a case much referred to in connection with the sub-ject of giving the infant his day, *Harris v. Youman*, 1 Hoffm., 178. This case, however, upon examination, will be found not to apply to the case of an infant trustee. A careful examination of the Digests has failed to disclose any cases in point, and suggests the inference that, in most of the states, the enactment of statutes following the general course of the English legislation, and similar in effect to our own, has made the question of giving the infant a day in cases like this one not likely to arise.

II. In cases to which the Statute applies where a case is plain, and the trust is declared by decree, it is unnecessary that a petition for a conveyance should be filed, but the conveyance will be directed in the same decree. This is the established practice in England in cases arising under the Statute of Will. IV, in which the provisions for a conveyance upon petition are exactly the same as those of our Statute.

*Miller v. Knight*, 1 Keen, 129; *Broom v. Broom*, 3 Myl. & K., 443; *Clinton v. Bernard*, 6 Ir. Eq. R, 355.

III. Where the Court of Chancery decrees land to be held by the parties as tenants in common and partition is prayed it should be decreed without requiring the parties to resort to a petition under the Statute.

The Statutory jurisdiction for partition upon petition is permissive and not intended to supersede the equitable jurisdiction to make partition upon bill filed.

That it was entirely within the province of the Chancellor to have decreed a partition in the cause, is clearly shown in the case of *Marshall et. al. v. Rench et. al.*, 3 Del. Chy. Rep., 239.

The jurisdiction of equity to make partition of lands is a very ancient one.

1 *Story Eq. Jur.*, Sec. 646.

It is a general principle that the Court of Equity, having acquired a jurisdiction for any purpose, will hold it even for purposes which are not ordinarily within its general jurisdiction.

1 *Story Eq. Jur.*, 564-66.

*A fortiori* having acquired jurisdiction of the subject matter for one purpose the Court will hold it for all purposes within *its own* general jurisdiction.

The Statutory proceeding for partition upon petition does not oust the original jurisdiction of the Court of Chancery to entertain a bill for partition. Our Statute, *Rev. Code,* Ch. 86, Sec. 8, by its terms, provides only that persons who hold as joint tenants, or tenants in common, *may* prefer a petition to the Chancellor of this State; it is not obligatory.

In the present case, the Court having decreed a resulting trust and a conveyance under its general powers, could have disposed of all other questions affecting the property.

The bill prayed for partition and other relief; the right of partition was established by the decree declaring a resulting trust and directing a conveyance, and it was entirely competent for the Court, in the light of the authority cited, in the exercise of its general jurisdiction over such subjects, to have included an order for partition, and thus relieve the parties from the inconvenience and expense attending a new proceeding by petition for that purpose.

*Rann v. Rann,* 95 Ill., 433; *Allnatt on Partition,* 5 (Law Lib.) 34.

Where it is manifestly for the interest of an infant, a Court of Chancery will authorize a sale of his real estate.

*Ex parte Jewett,* 16 Ala., 409; *Clifford v. Clifford,* 1 Desaus., 115; *Huger v. Huger,* 3 Id, 18; *Stapleton v. Langstaff,* Id, 22; *Livingston v. Livingston,* 2 Johns Ch., 537; *Scholefield v. Heafield,* 8 Sim., 470.

*George H. Bates,* for defendants.

COMEGYS, C. J.: It appears, by the proceedings in the Court below, that the case before this Court is one where the ancestors of the heirs at law defendants, and husband of the other defendant, was seized at the time of his death intestate of an equal undivided half part of the premises described in the bill as a trustee for the complainant in and by a constructive trust arising out of the circumstance of the said premises having been purchased by the intestate for the use and benefit of himself and the complainant,

who paid one half of the purchase money thereof, but to whom no title was made, the intestate alone taking it by an unobjectionable arrangement between them.    These facts supporting the allegations of the complainant's bill, were all established in the suit below, to which all the heirs at law of the intestate who were of age, and his widow aforesaid appeared and filed their answers admitting such facts, and submitting to decree as prayed for; and the minors, or those not of age, viz, Maria Robinson and  Robert E. Robinson appearing by their guardian and answering in the usual manner.

The bill prays that the heirs at law of the intestate be decreed to hold a moiety of the property in trust for the complainant; that a conveyance to him be decreed, and that partition be made among the parties entitled.

The decree establishes the trust, and directs the conveyance prayed for; but, as to the minors aforesaid, provides, *pro forma* that it is to be binding upon those who were minors at its date, unless they or either of them, being served with process to show cause against it, shall, within six months after their respective majority, show unto the Court good cause to the contrary.

The causes of appeal are, substantially, these—that the Chancellor erred in postponing the time when the decree should take effect as to the minors until they respectively come of age; or in other words, allowing them a day in court; and that he also erred in not decreeing partition as prayed for in the bill.

It is true, as contended for by the complainant's solicitor, that in the case of what is called a dry trust, one without any benefit to the trustee, the decree is to be performed by infant trustees like those *sui juris*, no day in Court being allowed them to show cause against it.    But a different rule prevailed where trustees were infants and had any beneficial interest in the trust property—for example, claimed to hold it absolutely at law.    In such a case, the law was, that as their answers, filed as they were by guardians of the usual kind or *ad litem*, neither admitted nor denied anything, but submitted their interests to the Chancellor, to be decided according to equity, they should be allowed six months after they arrived at age to appear and oppose the decree, if made against their supposed interests.    As this practice was very inconvenient, postponing the actual acquisition of the legal title to a day, some-

times remotely distant, an act of parliament was passed in England in the first year of William IVth, (1830) which changed the course of practice above stated, the courts afterwards making no provision for a day in behalf of an infant trustee defendant.

The act of assembly of this State, to be found published in Hall's Digest, page 109, provides for decrees to be made against infant trustees for conveyance of the trust estates, but limits its operation to cases where .the trust is " only for others." Such is the law now, with the important modification made by striking out in the Revised Code of 1852, republished in 1874, the word only above quoted. The present law is to be found in the republication at page 571, and is contained in the following section of Chap. 95:

"Sec. 13. Any person under the age of twenty-one years, having real estate in trust for others, may, by direction of the Court of Chancery, given upon hearing all the parties concerned on the petition of those for whom such infant is trustee, or of the guardian of such infant, convey and assure such real estate in such manner as the said court shall direct, to any other person; and such conveyance shall be as good and effective in law as if the said infant was of full age; and such infant may be compelled to execute such order, in like manner as trustees of full age are compellable to convey or assure trust estates."

It seems quite sufficiently certain that dropping the word " only " from the old act, as by the above section, must have been intended to conform our legislation to that of England under the act of parliament above referred to; and that now here, as there, where a suit is instituted to establish a trust, and the parties are heard in it, a decree against an infant is as effectual as are against persons *sui juris*. This, in fact, is no hardship upon a minor, as by the practice of the Court he is entitled to a rehearing if applied for in six months after he arrives at age, and also to an appeal at any time before the expiration of two years from the time his disability ceases. No distinction exists now, with respect to the jurisdiction over infant trustees, between express and constructive trusts. See *Walsh and another v. Richard J. Walsh and others*, 116 Mass., 377, and the cases there cited. This case established a different rule from that laid down in *Coffin v. Heath*, 6 Metc., 76, and under a statute similar in effect to ours above quoted. We are therefore

of opinion that the *pro forma* part of the decree should be reversed and we order accordingly. And we do not see how any question could well arise as to the effect of a decree in a case like that before us. The trust is established. The infants therefore hold, as trustees, only the legal title in their shares in the moiety upon which the trust is fastened:—their right to a rehearing, or appeal does not affect this view.

With respect to the cause of appeal—that the Chancellor did not decree partition—we are of opinion that the ancient jurisdiction of the Court of Chancery to order partition between tenants in common is not affected by the statute law of the State, where, in adjudicating between parties holding joint interests in law it will promote the several interests of the litigants that partition should be made, and it is prayed for in the bill, and the assistance of the Court for some of the purposes peculiar to its jurisdiction are needed. We do not see that any aid from the Court is requisite in this case; and, therefore, shall decline to decree partition, leaving the appellant to his remedy under the statute—which is so much better than that by bill, as in it valuation and sale can be had where partition would be detrimental.